UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONIE ECKHART,

    Plaintiff,                                                Hon. Gordon J. Quist

v.                                                               Case No. 1:08-CV-1234

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 41 years of age at the time of the ALJ's decision. (Tr. 27, 33). She successfully completed high school, attended college briefly, and worked previously as an assembler, inspector, manager, waitress, and teacher's assistant. (Tr. 124-31, 143, 148, 162-68).

Plaintiff applied for benefits on November 30, 2002, alleging that she had been disabled since April 25, 2001, due to back and neck pain suffered in a car accident and complications from child birth. (Tr. 87-89, 142). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 41-70). Plaintiff subsequently appeared before ALJ Patricia Hartman, who denied Plaintiff's applications in a July 25, 2005 opinion. (Tr. 59-64). The Appeals Council later remanded the matter for further consideration, however, because the ALJ's decision was "unclear regarding [Plaintiff's] maximum residual functional capacity." (Tr. 71-73).

On September 20, 2006, Plaintiff appeared before ALJ Earl Witten, with testimony being offered by Plaintiff, Plaintiff's husband, and vocational expert, David Hecker. (Tr. 609-68). In a written decision dated April 17, 2007, the ALJ determined that Plaintiff was disabled from February 1, 2003, through August 1, 2004, but was not disabled at any time prior to or after this specific period. (Tr. 20-33). The Appeals Council declined to review the ALJ's determination,

rendering it the Commissioner's final decision in the matter. (Tr. 7-10). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On May 21, 2000, Plaintiff fell, injuring her left upper extremity. (Tr. 193). X-rays of Plaintiff's left elbow and forearm, taken two days later, were "negative." (Tr. 314-15). On June 9, 2000, Plaintiff participated in a whole body bone scan the results of which were "normal." (Tr. 309). Plaintiff was later diagnosed with impingement syndrome of the left shoulder for which she underwent arthroscopic surgery on September 19, 2000. (Tr. 187-88).

Plaintiff was involved in an automobile accident in April 2001. (Tr. 365).

On December 26, 2001, Plaintiff gave birth via cesarean section. (Tr. 215-21). As part of this procedure, Plaintiff's doctor also placed a stent in Plaintiff's right ureter. (Tr. 215-21).

X-rays of Plaintiff's cervical spine, taken on February 11, 2002, revealed "mild" degenerative changes at C5-C6, with no evidence of misalignment or fracture. (Tr. 307).

On March 1, 2002, Plaintiff participated in an EMG examination of her upper extremities, the results of which revealed evidence of "mild to moderate" right carpal tunnel syndrome and "mild" left carpal tunnel syndrome. (Tr. 342-44). The doctor recommended conservative treatment (i.e., "splinting at night and anti-inflammatory medications"). (Tr. 344).

On May 9, 2002, Plaintiff underwent an intravenous pyelogram[1] with tomography procedure, the results of which were "negative." (Tr. 298).

---

[1] An intravenous pyelogram is an x-ray examination of the kidneys, ureters, and urinary bladder that utilizes iodinated contrast material that is injected into the patient's veins. *See* Intravenous Pyelogram, available at http://www.radiologyinfo.org/en/info.cfm?pg=ivp (last visited on January 13, 2010).

On May 14, 2002, Plaintiff participated in an MRI examination of her lumbar spine, the results of which revealed "mild" herniations at L4-L5 and L1-L2, with "no central canal stenosis or significant neuroforaminal narrowing." (Tr. 303-04). An MRI examination of Plaintiff's right shoulder, performed the same day, revealed a "combination of partial tear and tendinopathy. . .involving the supraspinatus." (Tr. 301-02).

On February 14, 2003, Plaintiff was examined by Dr. Gregory Graziano. (Tr. 383). Plaintiff reported that she was experiencing "pain from her neck to her tailbone with radiation of pain to her right lower extremity radiating to her right foot." (Tr. 383). Plaintiff rated her pain as 8, but reported that she was not taking any medication. (Tr. 383). Plaintiff exhibited 5/5 strength in her lower extremities and a neurosensory examination revealed that Plaintiff was "intact with a slight neuro deficit in her right lower extremity." (Tr. 383). X-rays of Plaintiff's cervical and lumbar spine were "normal." (Tr. 383). The doctor recommended that Plaintiff participate in an MRI examination. (Tr. 383).

On March 22, 2003, Plaintiff was examined by Dr. Elaine Kountanis. (Tr. 365-68). Plaintiff reported that she was experiencing lower back pain that radiated into her right thigh. (Tr. 365). Plaintiff rated her pain as 8/10. (Tr. 365). The results of motor testing were "normal" with no evidence of atrophy or spasm. (Tr. 366). Plaintiff exhibited no sensory deficits and straight leg raising was negative. (Tr. 366). Plaintiff exhibited "intact" gross and fine motor coordination and was able to perform all requested orthopedic maneuvers "without assistance or modification." (Tr. 366-67). Babinski testing[2] was negative and Plaintiff exhibited "normal" range of motion in "all

---

[2] Babinski test is a neurological test designed to discern damage to the central nervous system. *See* Babinski, available at http://www.medterms.com/script/main/art.asp?articlekey=7171 (last visited on January 13, 2010).

areas especially in the shoulders, neck and [lumbosacral] region though she did have pain in the extremes of the range of motion." (Tr. 366). Dr. Kountanis diagnosed Plaintiff with arthralgias of the shoulders, neck, and lumbosacral regions. (Tr. 367).

On March 28, 2003, Plaintiff was again examined by Dr. Graziano. (Tr. 381-82). An examination of Plaintiff's upper extremities revealed "intact motor and sensory function in the median, radial, and ulnar nerve distributions." (Tr. 381). An examination of Plaintiff's lower extremities revealed that Plaintiff was "neurovascularly intact throughout with 5/5 strength throughout." (Tr. 381). The doctor reported that a recent MRI examination of Plaintiff's lumbar spine revealed "mild degenerative disc disease of the L5-S1 disc space." (Tr. 381). The doctor noted that "this is not something that can likely be helped by an operation." (Tr. 381). An MRI of Plaintiff's cervical spine, however, revealed "C5-C6 degenerative disc disease with right foraminal stenosis," for which Dr. Graziano recommended surgery. (Tr. 381, 406-07).

Plaintiff underwent cervical fusion surgery in February 2004. (Tr. 378, 457, 625). On July 30, 2004, Plaintiff's care providers reported that Plaintiff's cervical fusion was "now healed" and that Plaintiff was under "0 restrictions" and could "return to work without limitations." (Tr. 378).

On December 15, 2004, Plaintiff fell on the ice. (Tr. 457). Plaintiff reported to the emergency room two days later. (Tr. 457). X-rays of her right elbow were "negative." (Tr. 462). A CT scan of her head was "normal." (Tr. 460). X-rays of Plaintiff's cervical spine revealed no evidence of fracture or subluxation. (Tr. 461). These x-rays also revealed that the

> Overall stature and alignment across [the cervical fusion location] is satisfactory. Facets are in proper relationship. Neural foramina are patent bilaterally. Atlantoaxial level is intact.

(Tr. 461).

On or about December 11, 2005, Plaintiff fell injuring her left ankle. (Tr. 429). On December 15, 2005, Plaintiff reported to the emergency room. (Tr. 429). The results of a physical examination were unremarkable. (Tr. 429-37). X-rays of Plaintiff's left hip were "normal." (Tr. 442). X-rays of Plaintiff's left ankle revealed a "bone density at the tip of the medial malleolus," but no evidence of any other abnormality. (Tr. 440). X-rays of Plaintiff's left foot revealed no evidence of fracture, dislocation, or other bony abnormality. (Tr. 441). Plaintiff was diagnosed with a sprained ankle. (Tr. 436).

The record also contains an undated questionnaire completed by Plaintiff's mother concerning Plaintiff's activities. (Tr. 135-140). According to this report, on a typical day Plaintiff vacuums, sweeps, washes dishes, cooks, and washes laundry. (Tr. 135). Plaintiff's mother reported that Plaintiff enjoys going to bingo, playing cards, and watching television. (Tr. 135). Her mother also reported that Plaintiff drives, shops, cares for her children, and goes out to eat. (Tr. 137-38).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffers from (1) cervical disc disease, status post anterior cervical fusion; (2) headaches; (3) shoulder degenerative joint disease; (4) bilateral carpal tunnel syndrome; (5) mild degenerative changes of the lumbar spine; and (6) affective disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 24-27). The ALJ found that from February 1, 2003, through July 31, 2004, Plaintiff was unable to perform her past relevant work or any other work that

7

existed in significant numbers. (Tr. 27-28). While the ALJ determined that Plaintiff was disabled during this discreet period of time, he further concluded that Plaintiff was not disabled prior to February 1, 2003, or after August 1, 2004.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

As previously noted, with respect to the period from February 1, 2003, through July 31, 2004, during which time Plaintiff underwent cervical fusion surgery, the ALJ concluded that Plaintiff's condition prevented her from "engaging in any substantial activity on a regular and sustained basis." (Tr. 27). With respect to the period prior to February 1, 2003, and the period from August 1, 2004, through the date of his decision, the ALJ determined that Plaintiff retained the ability to work subject to the following limitations: (1) she can lift/carry 10 pounds occasionally and 5 pounds frequently; (2) she can stand/walk for 2 hours during an 8-hour day; (3) she can sit for 6 hours during an 8-hour workday; (4) she cannot crawl, squat, kneel, or climb; (5) she cannot perform overhead work; (6) she cannot perform forceful gripping or grasping activities; (7) she cannot use air or vibrating tools; (8) she cannot work around unprotected heights or dangerous moving machinery; and (9) she can have only limited contact with the general public. (Tr. 29). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her

9

limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Donald Hecker.

With respect to Plaintiff's RFC during the time period prior to February 1, 2003, and beginning on August 1, 2004, the vocational expert testified that there existed approximately 16,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 660-65). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006) (870 jobs in region constitutes a significant number). The vocational expert further testified that if Plaintiff were further limited to jobs which required a sit-stand option, there still existed 7,000 jobs which Plaintiff could perform. (Tr. 665).

a.                   The ALJ Properly Evaluated Plaintiff's Credibility

At the administrative hearing, Plaintiff testified that her impairments prevented her from working. Specifically, Plaintiff reported that "at least" five days out of seven she experiences back and leg pain that rates 9 on a scale of 0-10. (Tr. 628). Plaintiff reported that she experiences neck pain so severe that she feels as if she is suffering a heart attack. (Tr. 629). Plaintiff reported that she experiences numbness and tingling in her hands that prevents her from even lifting a coffee cup. (Tr. 630-33). Plaintiff also acknowledged, however, that she declined to undergo carpal tunnel surgery when it was offered. (Tr. 630-32). Plaintiff also reported that she suffers from memory impairment and hears voices in her head. (Tr. 634-35, 641-42). The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible prior to February 1, 2003, and from August 1, 2004 thereafter." (Tr. 30). Plaintiff asserts that the ALJ failed to give proper weight to her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the

> alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ examined the record in great detail and engaged in a lengthy discussion as to why he found Plaintiff less than credible. As the ALJ correctly determined, the objective medical

12

evidence does not support Plaintiff's subjective allegations of pain and limitation. (Tr. 30-31). As the ALJ also observed, Plaintiff "did not engage in regular treatment for her allegedly debilitating health concerns". . .and "did not participate in work hardening, protracted physical therapy, or other ongoing rehabilitative measures." (Tr. 30). The ALJ observed that despite complaining of severe and almost constant pain, Plaintiff "took no prescription strength medication." (Tr. 30). The ALJ also correctly observed that none of Plaintiff's care providers imposed upon Plaintiff limitations that were inconsistent with his RFC determination. (Tr. 30-31). In fact, as previously noted, treatment notes dated July 30, 2004, concerning Plaintiff's cervical fusion, indicate that Plaintiff was under "0 restrictions" and could "return to work without limitations." In sum, the undersigned concludes that there exists substantial evidence to support the ALJ's credibility determination.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: January 22, 2010  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge